United States Courts
Southern District of Texas
FILED
*October 27, 2026*
Nathan Ochsner, Clerk of Court

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | | |
|---|---|---|---|
| **UNITED STATES OF AMERICA** | § | | |
| | § | | |
| **V.** | § | **CRIM NO.** | **4:26-cr-700** |
| | § | | |
| **FORRIS WASHINGTON** | § | | |

## INFORMATION

**THE UNITED STATES ATTORNEY CHARGES:**

At all times relevant to this Information:

### INTRODUCTION

PHARMACEUTICAL SERVICES

1. Pharmacies may dispense pre-manufactured and compounded medications.

2. A pre-manufactured medication is a medication that is mass-produced for use by a large population of patients. A pre-manufactured medication is purchased by a pharmacy in the same form in which the pharmacy dispenses it to patients.

3. In the state of Texas, the Texas Board of Pharmacy regulates the practice of pharmacy.

PRIVATELY INSURED DRUG PLANS

4. Commercial insurance companies, employers, and private entities offer prescription drug plans. A beneficiary in a privately insured drug plan could fill a prescription at a pharmacy and use her or his plan to pay for some or all of the prescription.

5. Cigna was a private insurance company providing medical and drug insurance coverage in the state of Texas and elsewhere. Cigna was a "health care benefit program" as defined by Title 18, United States Code, Section 24(b).

THIRD PARTY ADMINISTRATORS

6. A Pharmacy Benefit Manager ("PBM") is a third-party administrator of prescription drug programs, including privately or government insured drug plans, and acts on behalf of one or more prescription drug plans.

7. A Pharmacy Services Administrative Organization ("PSAO") is also a third-party entity, which provides various services such as contract negotiation and communication to pharmacies. Pharmacies may contract with PSAOs, which in turn contract with PBMs, such that PSAO member pharmacies may participate in a PBM Network.

8. A pharmacy could participate in a privately or government-insured plan by entering an agreement directly with the insured plan, or indirectly by joining a PBM's pharmacy network through an agreement with a PBM or a PSAO.

9. When a pharmacy receives a prescription from a privately or government-insured beneficiary, the pharmacy is to collect any applicable co-pay from the beneficiary, dispense the drug to the beneficiary, and submit a claim for reimbursement to the PBM that represents the beneficiary's insured drug plan. The plan or PBM determines whether the pharmacy is entitled to payment for each claim. The pharmacy periodically receives payment for submitted claims from the Plan, PBM, or a PSAO. If payment is made by a PBM or PSAO, those entities are ultimately reimbursed, directly or indirectly, by the insured plan.

10. Prime Therapeutics is a PBM for Cigna and other insurance plans, and Express Scripts Incorporated ("Express Scripts") is a PBM for various insurance plans.

11. OptumRx is a PBM for UnitedHealthcare, Blue Cross and Blue Shield, and other insurance plans.

12. Prime Therapeutics, Express Scripts, OptumRx are "health care benefit programs," as defined by Title 18, United States Code, Section 24(b), that affected commerce, as that term is used in Title 18, United States Code, Section 1347.

13. To become a PBM network pharmacy, a pharmacy agrees to be bound by, and comply with, all applicable State and Federal laws, specifically including those addressing fraud, waste, and abuse. A pharmacy also agrees to be bound by the PBM's rules and regulations.

## THE DEFENDANTS, CO-CONSPIRATORS, AND PHARMACIES

14. Town Pharmacy, LLC (hereafter "Town") was a pharmacy located at 3806 Avenue I, Suite 3, Rosenberg, Tx 77471 between in or around December 2020 through in or around June 2021 and 990 Rayford Road, Suite 106, Houston, Tx 77386 in or around June 2021 through October 2022.

15. Town contracted, including through PSAOs, to participate in the pharmacy networks of various PBMs, including Prime Therapeutics, OptumRx, Express Scripts, and Cigna, and Town billed for prescription drugs through their contracts with these entities.

16. The Defendant **FORRIS WASHINGTON** (hereafter "**WASHINGTON**"), maintained ultimate control over Brazos and Town between in or around October 2019 to October 2022.

17. Co-Conspirator 1 was the straw owner of Town.

18. **FORRIS WASHINGTON** (hereafter "**WASHINGTON**") maintained ultimate control over Town between in or around October 2019 to October 2022.

**COUNT 1**
**Conspiracy to Commit Healthcare Fraud**
**(18 U.S.C. § 371)**

At all times material to this Information,

19. Paragraphs 1 through 20 of this Information are fully incorporated as though set forth herein.

20. From in or about October 2019 and continuing until in or about October 2022, the exact dates being unknown, within the Southern District of Texas, and elsewhere, the defendant **FORRIS WASHINGTON**, knowingly and willfully conspired, combined, and agreed with others known and unknown:

a. to execute a scheme and artifice to defraud health care benefit programs affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Cigna, Prime Therapeutics , OptumRx, Express Scripts, and others, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit programs, in connection with the delivery and payment for health care benefits, items and services, in violation Title 18, United States Code, Section 1347.

**MANNER AND MEANS OF THE CONSPIRACY**

21. It was part of the conspiracy that **WASHINGTON** paid Co-conspirator and others known and unknown to open and/or operate Town pharmacy and to find a straw owner while **WASHINGTON** maintained the ultimate decision making and financial power over Town.

22. It was further part of the conspiracy to generate sales for the Pharmacies, **WASHINGTON** purchased “leads” (fraudulent prescriptions). **WASHINGTON** distributed the leads to Town.

23. It was further part of the conspiracy that Pharmacist 1 acted as “Pharmacist In Charge” at Brazos and Town and at times would allow his NPI and name to be used to fill the prescriptions that were obtained via “leads.” At other times, Pharmacist 1 allowed his information to be used to pretend to fill the prescriptions, when in reality no prescription was filled. Pharmacist 1 was paid by **WASHINGTON** for the use of his information.

25. It was further part of the conspiracy that the co-conspirators would bill the listed insurance entities and others as though a legitimate prescription was filled.

26. Town’s total loss amount attributed to the false billings was $471,466.76.

**OVERT ACTS**

In furtherance of the conspiracy and to achieve the objects thereof, the Defendants and others known and unknown committed and caused to be committed the following overt acts, among others, in the Southern District of Texas and elsewhere:

27. On or about December 2020, posing as an “investor” so as to avoid liability, **WASHINGTON** paid Co-Conspirator 1 to purchase Town in Co-Conspirator’s name.

**NOTICE OF CRIMINAL FORFEITURE**
**(18 U.S.C. § 982(a)(7))**

28. Pursuant to United States Code, Section 982(a)(7), the United States of America gives notice to defendant, **FORRIS WASHINGTON** that, in the event of conviction for any of the violations charged in Count One of the Information, the United States intends to forfeit all property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of any such offense, including but not limited to, a money judgment in the amount of at least $471,466.76 million in United States currency.

29. In the event that the property subject to forfeiture as a result of any act or omission of a defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States to seek forfeiture of any other property of the defendant up to the total value of the property subject to forfeiture, pursuant to Title 21, United States Code, Section 853(p), incorporated by reference in Title 18, United States Code, Section 982(b)(1).

AARON F. REITZ
UNITED STATES ATTORNEY

Tina Ansari
TINA ANSARI
ASSISTANT UNITED STATES ATTORNEY